**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **G.C., A MINOR, BY AND THROUGH HIS** | ) | |
| **FATHER, CRAIG CARLSON, AND HIS** | ) | **Case No.** |
| **MOTHER, KERRI CARLSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **-vs-** | ) | |
| | ) | |
| **MINOOKA COMMUNITY HIGH SCHOOL** | ) | |
| **DISTRICT 111,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## VERIFIED COMPLAINT

Plaintiff, G.C., a Minor, by and through his father, CRAIG CARLSON, and his mother,

KERRI CARLSON, hereinafter "Plaintiff," complains against Defendant, MINOOKA

COMMUNITY HIGH SCHOOL DISTRICT, hereinafter "MCHS District," as follows:

## NATURE OF ACTION

1.     This action arises under the First Amendment and Fifth Amendment to the United

States Constitution, as made applicable to the Defendant by the due process clause of the

Fourteenth Amendment, and arises out of MCHS District's exclusion of a sophomore high

school student, G.C., from cross-country athletics as additional punishment for two posts on

Snapchat - created outside of school, on his own time - that school officials believed were

"inappropriate" because the language was derogatory/ racial.  Plaintiff seeks injunctive relief.

## JURISDICTION AND VENUE

2.     This action seeks to vindicate rights protected by the First and Fourteenth

Amendments to the U.S. Constitution, and is brought under 42 U.S.C.§ 1983 and 1988(b) and

(c).  This Court has jurisdiction over this civil rights action under 28 U.S.C. §§ 1331 and 1343.

This Court also has jurisdiction under 28 U.S.C. §§ 2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

3.      Venue is appropriate pursuant to 28 U.S.C. § 139l because Plaintiff resides within the Northern District of Illinois and the acts giving rise to this action occurred within the Northern District of Illinois.

### PARTIES

4.      Plaintiff is a fifteen-year-old student enrolled in Minooka Community High School District 111.  He lives with his parents, Craig and Kerri Carlson, in Will County, Illinois.

5.      Mr. and Mrs. Carlson bring this action on behalf of their son G.C.

6.      Defendant, Minooka Community High School District 111, is a body politic with its district office at 26655 W. Eames Street, Channahon, IL 60410.

### FACTS

7.      G.C. is now a tenth grade student at Minooka Community High School and is scheduled to begin school on August 11, 2021 at MCHS South Campus located in Channahon.

8.      G.C. began at Minooka Community High School, South Campus, as a Freshman in August 2020.  As a Freshman, G.C. participated in the cross country running program in the Fall of 2020 and expected to participate in the cross country team as a Sophomore in the Fall of 2021.

9.      In January 2021, however, G.C. participated with five other students in a group text on Snapchat.  During this conversation, G.C. made two comments at issue.  In one message, G.C. repeatedly typed the word "nigger" and later stated "that black bitch."  G.C.'s statements were made in the context of an argument the five students were having about politics.

10.      All of the students who were part of this conversation were white and the word

"nigger" was not made in reference to any particular person. G.C.'s reference to "that black bitch" was also not knowingly directed at anyone.

11.     The Snaps were not accessible to the general public and G.C. believed his conversations were private.

12.     Snapchat deletes all Snaps from the platform after 24 hours, so G.C.'s Snap disappeared from Snapchat the next day. However, without G.C.'s knowledge or acquiescence, one of the participants in the conversation took screen shots of the chat and shared G.C.'s posts with another student who was black. Shortly thereafter, MCHS Administration was made aware of the Snapchat conversation.

13.     During all relevant times, MCHS was operating remotely because of the pandemic. G.C. made the statements during a passing break between classes and did not use any school resources to create the Snapchat message.

14.     G.C. did not know the student with whom the Snap was surreptitiously shared.

15.     On January 20, 2021, MCHS issued G.C. a "discipline referral," a true and correct copy of which is hereto attached as Exhibit A, for "Inappropriate Language (Derogatory/Racial)" as referenced on page 37 of the Student Code of Conduct, a true and correct copy of the Student Code of Conduct, including the Student/Parent Athletic Handbook, is hereto attached at Exhibit B as follows:

> DEROGATORY/DISCRIMINATORY LANGUAGE: RACIAL, ETHNIC, GENDER IDENTIFICATION, RELIGIOUS BELIEFS, SEXUAL ORIENTATION (LGBTQ)
>
> Language that is intended to offend or abuse, including that associated with computer use, i.e., internet web pages and any other kind of propaganda, is a violation of school and district policies and will be handled through the school's disciplinary code.
>
> Disciplinary action may include any of the following, depending upon the severity of the conduct: warning, detention, suspension, police referral, or expulsion proceedings.

DocuSign Envelope ID: B82E2B90-4968-4C9A-8B54-789C583C2CCB

16.     The disciplinary referral issued to G.C. stated,"[a]s a result of his actions [G.C.] will be suspended for 10 days out of building with a possible recommendation for expulsion, socially suspended, receive Equity and Diversity Training through the Walker Thomas Group to be completed the week of February 1-5 (TBD) and a referral to the Athletic Director for possible code of conduct[.]"  G.C. was also given 80 demerits.

17.     According to the Student Code of Conduct, at 75 total demerits, "a behavior contract may be put in place to establish specific loss of privilege such as hall pass, parking and attendance at extra-curricular activities.  Student will also be socially suspended for the remainder of the school year."

18.     At 85 demerits, a final warning is given and the student is notified that if he/she reaches 100 demerits, he/she may be brought to the Board of Education for an expulsion hearing or alternative placement.  The student is also socially suspended for the remainder of the school year.

19.     At 100 demerits, a student may be brought before the Board of Education for expulsion or alternatively placed in lieu of expulsion.  If the student is alternatively placed for behavioral reasons, he/she will "not be allowed on campus without permission" and "not be allowed to participate in athletics or any other extra-curricular activity as determined by the administration."

20.     The Student Code of Conduct provides for expulsion "[i]n cases of repeated or extreme anti-social [conduct], gross disobedience, or illegal behavior, the principal may recommend to the Board of Education that expulsion proceedings be initiated."

21.     "Loss of Privileges," including athletics is also possible "when a student does not comply with school rules."

22.     "A socially suspended student may not attend or participate in any school functions while serving the social suspension.  Any student who has been suspended out-of-building is automatically placed on social suspension for the length of the suspension.  The maximum length of social suspension is "the remainder of the school year."

23.     According to the Student Code of Conduct, "[t]he School District addresses student misconduct on a case-by-case basis, considering the individual circumstances of each incident.  The interventions and consequences listed above in this handbook are guidelines only, and may be modified at the discretion of school officials."

24.     The Student-Athlete Disciplinary Code provides that a "student-athlete will be subject to disciplinary action during the school year or athletic season (whichever is longer) when he or she commits . . . severe violation of the MCHS Student Handbook Disciplinary Code."

25.     A student accused of a violation will be informed of the charge and given an opportunity to respond.  Any student found to be in violation of the Student-Athlete Disciplinary Code is subject to disciplinary action.  The disciplinary actions identified are "probation" and "suspension."  A Level One violation, which includes severe violations of the MCHS student handbook disciplinary code "will result in loss of 20% of the regular season dates."

26.     Student-athletes are expected to attend all practices and games while serving a suspension that will end before the conclusion of the season and if a student-athlete's suspension ends during an upcoming season, the student-athlete will be allowed to try out in that season.

27.     On January 28, 2021, G.C., his parents, and MCHS District 111 entered into a "Disciplinary Settlement Agreement," a true and correct copy of which is hereto attached as Exhibit C, "for the period of January 28, 2021, until the end of the first semester of the 2021-

2022 school year."

28. The Disciplinary Settlement Agreement stated in relevant part:

1. The Student is recommended for expulsion by the Administration at Minooka Community High School for gross disobedience and misconduct as follows:

- Derogatory/ Discriminatory Language: Racial, via Social Media (Handbook pg. 27)

2. As an alternative to expulsion, the parties have agreed that the Student will be allowed to attend Project Indian for the remainder of the 2020-2021 school year and first semester of the 2021-2022 school year.

3. The parties agree that further discipline of the Student shall be deferred pending implementation of the terms of this Agreement.

4. The following provision will govern the Student's attendance at Project Indian:

   a. The Student is to abide by the policies, guidelines, and conduct rules established by Project Indian and Minooka Community High School District No. 111.

   b. Minooka Community High School District No. 111 will accept all credits earned through project Indian.

   c. During the remainder of the 2020-2021 school year and first semester of the 2021-2022 school year, the Student is not to enter upon the premises of Minooka Community High School District No. 111, and is not to attend any functions of Minooka Community High School District No. 111, unless authorized by the Administration.

   d. A review of the progress will be made at the end of the first semester of the 2021-2022 school year. If all stipulations of this agreement are met and the Student has successfully completed the requirements of Project Indian, the student will be allowed to apply for re-entry at the beginning of the second semester of the 2021-2022 school year.

5. If the student participates in and successfully completes a Cultural and Diversity Awareness Program approved by the Minooka Community High School District No. 111 during the second semester of the 2020-2021 school term (Date: February 2, 2021), the student will be allowed to apply

for early re-entry into Minooka Community High School for the start of the first semester of the 2021-2022 school term.

6.    This Agreement shall constitute a "final warning" to the Student. Should the Student violate the terms of this Agreement or otherwise engage in conduct, which, in the view of the Minooka Community High School Administration or the expectations of Project Indian, is contrary to the spirit of this Agreement, the Administration reserves the right to discipline the Student by way of expulsion or otherwise, on the basis of the charges currently pending[.]

29.    G.C. met all of the expectations under the Disciplinary Settlement Agreement.

30.    G.C. participated in and successfully completed a Cultural and Diversity Awareness Program approved by the Minooka Community High School District No. 111 during the second semester of the 2020-2021 school term. G.C. has otherwise complied with all terms of the Agreement.

31.    In accordance with paragraph 5, of the Disciplinary Settlement Agreement, MCHS District No. 111 is permitting G.C. to attend the first semester of the 2021-2022 school term at Minooka Community High School. However, MCHS District No. 111 is refusing to permit G.C. to participate in the cross country running team which is scheduled to begin practice August 9, 2021.

32.    MCSC District No. 111 apparently now contends that the Disciplinary Settlement Agreement did not address the disciplinary referral to the Athletic Director/Coach.

33.    The Student Code of Conduct provides: "School rules apply to students at school, at school activities (whether at MCHS or another location) and on school approved transportation. Students will be subject to discipline for inappropriate behavior, including the following: engaging in any activity, on or off campus, that; poses a threat or danger to the safety of other students, staff, or school property, constitutes an interference with school purposes or an educational function, or is disruptive to the school environment. In general, inappropriate

behavior will be grounds for disciplinary action whenever the student's conduct is reasonably related to school or school activities. This includes any disruptive verbal, written, or electronic communication (i.e. email, text, social media) that causes a disruption to other students learning opportunities. School handbook jurisdiction may begin once a student leaves home in the morning and may extend until the student returns home after school." Exhibit B at ¶ 6.

34. G.C. did not materially disrupt school activities, cause substantial disorder, or invade the rights of any other student, by using racially derogatory language in a private Snapchat, sent from his home during a "passing period." It was another student who surreptitiously took a screen-shot of the language and disseminated it to at least one other student who, while not the subject of the post, was offended by the language.

35. Other than the Snapchat posts, G.C. has never violated the Student Code of Conduct. Moreover, other than the Snapchat posts, G.C. has never violated the Student-Athlete Code of Conduct.

36. When G.C.'s parents met with the representatives from MCHS District No. 111 on or about January 28, 2021 concerning G.C.'s proposed expulsion, they specifically asked whether G.C. would face further action with regard to athletics should they sign the Disciplinary Settlement Agreement and should G.C. fully comply, to which MCSH District No. 111 representatives replied "no." In reliance upon this representation, G.C.'s parents signed the agreement.

37. Cross-country running is the main extracurricular activity to which G.C. has devoted time and energy.

38. Colleges and universities judge applicants not only on their academic records, but also on the depth of their involvement in extracurricular activities.

39.     Being suspended from cross-country impairs G.C.'s opportunities to gain admission to top colleges and to receive athletic scholarships.

40.     Sustained participation in extracurricular activities also has significant benefits for student well-being.  Among other benefits, students who participate in extracurricular activities are less likely to abuse alcohol or drugs than students who do not participate in extracurriculars.  This is particularly true after students have been isolated for over a year during the Pandemic.

41.     G.C. misses cross-country and wants to return to the team.  G.C.'s coach has stated that G.C. will be eligible to join the team and participate in the sectional and state meets if G.C. joins the team before October 30, 2021.

42.     G.C.'s exclusion from the cross-country running team constitutes irreparable harm that cannot be adequately remedied by money damages.

### COUNT I
### SUBSTANTIVE DUE PROCESS

43.     Plaintiff incorporates in this Count I, paragraphs 1-42 as if fully alleged herein.

44.     After receiving a Disciplinary Referral, Exhibit A, the parties herein entered into a Disciplinary Settlement Agreement, Exhibit C, whereby in lieu of expulsion, G.C. would be permitted to attend Project Indian for the remainder of the 2020-2021 school year and the first semester of the 2021-2022 school year, except that, if G.C. successfully completed a Cultural and Diversity Awareness Program approved by the Minooka Community High School District No. 111 during the second semester of the 2020-2021 school term (Date: February 2, 2021), he would be allowed to apply for early re-entry into Minooka Community High School for the start of the first semester of the 2021-2022 school term.

45.     G.C. successfully attended Project Indian for the remainder of the 2020-2021

school year and successfully completed the cultural and diversity awareness program.  G.C. therefore applied for and was granted early reentry into MCHS for the 2021-2022 school term.

46.     The Disciplinary Settlement Agreement also stated that "[t]he parties agree that further discipline of the Student shall be deferred pending implementation of the terms of this Agreement" and warned that "[s]hould the Student violate the terms of this Agreement or otherwise engage in conduct, which, in the view of the Minooka Community High School Administration or the expectations of Project Indian, is contrary to the spirit of this Agreement, the Administration reserves the right to discipline the Student by way of expulsion or otherwise, on the basis of the charges currently pending[.]"

47.     G.C. has fully complied with the terms of the Disciplinary Settlement Agreement. Moreover, Defendant does not contend that G.C. has engaged in any other conduct that is contrary to the spirit of the Agreement.

48.     Despite Defendant's promise to defer further discipline pending implementation of the Agreement, Defendant now seeks to bar G.C. from participating in cross-country during the first semester of the 2021-2022 school year.  The cross-country running team commenced practice on August 9, 2021.

49.     G.C. has performed all conditions precedent of the Disciplinary Settlement Agreement and therefore G.C. should have the same rights and privileges as other students attending MCHS.

50.     While Defendant reserved the right to discipline G.C. should he fail to comply with the terms of the Agreement, Defendant does not have a right to implement further discipline "on the basis of the charges currently pending" where G.C. has fully complied with his obligations.

DocuSign Envelope ID: B82E2B90-4968-4C8A-8854-789C583C2CCB

51.     Moreover, even if Defendant could impose additional punishment under the Disciplinary Settlement Agreement, including referral to the Athletic Director/Coach, that punishment should be in accordance with the Student/Parent Athletic Handbook which provides for two levels of suspension.  A level one suspension "will result in loss of 20% of the regular season dates" and include "[s]evere violations of the MCHS student handbook disciplinary code."  A level two consequence is assigned to an athlete "when they have violated a Level One incident for the second time" or when they use and/or possess drugs or alcohol on or off school grounds.  A Level Two violation will result in a one calendar year suspension from the date of the occurrence, unless reduced pursuant to policy.

52.     G.C. has no other history of discipline and is not accused of using or possessing drugs or alcohol.  Thus, at most, G.C. would be subject to a loss of 20% of the regular season dates.  The Student/Parent Handbook also provides that student-athletes are expected to attend all practices and games while serving a suspension that will end before the conclusion of the season. G.C. should therefore be permitted to attend all practices and games pending the completion of his level one suspension if this Court determines that such is constitutionally permitted.

53.     To the extent Defendant is now imposing additional punishment upon G.C. after G.C. has successfully completed his obligations under the Disciplinary Settlement Agreement, the Defendant's actions are arbitrary and capricious.  Moreover, even if referral to the Athletic Director/ Coach was appropriate, Defendant's failure to comply with the terms of the Student/Parent Athletic Handbook is arbitrary and capricious.

54.     Finally, the Student/Parent Handbook provides that "Student-athletes will be subject to disciplinary action anytime their behavior is disruptive, illegal or inconsiderate of others.  Furthermore, the specific consequences listed below may be modified at the discretion of

11

the administration." To the extent Defendant relies upon this language to exercise unlimited

discretion, the Defendant's actions are arbitrary and capricious.

WHEREFORE Plaintiff respectfully requests that this Court provide the following relief:

A.    Declare that MCHS District No. 111 may not impose upon G.C. further
punishment or sanction for the acts which were the subject of the Disciplinary
Settlement Agreement;

B.    Enjoin MCHS District No. 111 from imposing upon G.C. further punishment or
sanction for the acts which were the subject of the Disciplinary Settlement
Agreement;

C.    Enjoin MCHS District No. 111 from prohibiting G.C. to participate in cross-
country sports or any other extra-curricular activity to which he would otherwise
be eligible but for the acts which were the subject of the Disciplinary Settlement
Agreement;

D.    Alternatively, enjoin MCHS District No. 111 from imposing upon G.C. more than
a 20% loss of the season and from prohibiting G.C. from attending practices and
games.

E.    Award Plaintiff costs and reasonable attorneys' fees pursuant to 42 U.S.C.S. 1988;
and

F.    Grant such other relief as this Court deems just and appropriate.

## COUNT II
## FIRST AMENDMENT

55.    Plaintiff incorporates in this Count II, paragraphs 1-42 as if fully alleged herein.

56.    The Defendant's disciplinary action against G.C. for his speech, which was made

in a private Snapchat conversation from his home, violated G.C.'s rights under the First and

Fourteenth Amendments to the U.S. Constitution.

57.    The Student Code of Conduct, on its face, violates the First and Fourteenth

Amendments to the U.S. Constitution because it is overbroad and constitutes viewpoint

discrimination.

58.    The Student/Parent Athletic Handbook, on its face, violates the First and

Fourteenth Amendments to the U.S. Constitution because it is overbroad and constitutes viewpoint discrimination.

59.    The Student Code of Conduct, on its face, violates the First and Fourteenth Amendments to the U.S. Constitution because it is unconstitutionally vague.

60.    The Student/Parent Athletic Handbook, on its face, violates the First and Fourteenth Amendments to the U.S. Constitution because it is unconstitutionally vague.

61.    The Student Code of Conduct and/or the Student/Parent Athletic Handbook, as applied to these circumstances, violate the First and Fourteenth Amendments to the U.S. Constitution.

WHEREFORE Plaintiff respectfully requests that this Court provide the following relief:

A.    Declare that the District's Student Code of Conduct and Student/Parent Athletic Handbook, on the face of each, violate the First and Fourteenth Amendments to the U.S. Constitution because they are overbroad and constitute viewpoint discrimination;

B.    Declare that the District's Student Code of Conduct and Student/Parent Athletic Handbook, on the face of each, violate the First and Fourteenth Amendments to the U.S. Constitution because they are vague, yet have been used, and may be used, to punish out-of-school speech;

C.    Declare that the District's Student Code of Conduct and Student/Parent Athletic Handbook, as applied herein, violate the First and Fourteenth Amendments to the U.S. Constitution;

D.    Enjoin the District from any continuing punishment or sanction against G.C. on account of his constitutionally protected speech, including immediately reinstating G.C. to the cross-country running team and expunging from G.C.'s school records all references to the incident in question;

E.    Award Plaintiff damages in an amount to be determined at trial;

F.    Award Plaintiff costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

G.    Grant such other relief as this Court deems just and appropriate.

DocuSign Envelope ID: B82E2B90-4068-4C8A-8854-789C583C2CCB

Respectfully submitted,
G.C., a Minor, by and through his father, CRAIG
CARLSON, and his mother, KERRI CARLSON


/s/ Deidre Baumann
_____


Deidre Baumann
Baumann & Shuldiner
77 W. Wacker, Suite 4500
Chicago, IL 60601
(312) 558-3119
baumannesq@gmail.com


## **DECLARATION**

We, CRAIG CARLSON and KERRI CARLSON, on behalf of our minor son G.C. and

under provisions of Title 28 United States Code, Section 1746, make the following unsworn

declaration under penalty of perjury:

We have read this verified complaint and certify and declare that the statements

contained herein are true and accurate to the best of our knowledge, information and belief.


FURTHER AFFIANTS SAYETH NAUGHT.


Date:   August 13, 2021

_____
CRAIG CARLSON


_____
KERRI CARLSON